# Exhibit A
**(Revised Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Creative Group., Inc., *et al.*,[1] | Case No.  08-10975 (RDD) (Jointly Administered) |
| Debtors. | |

## ORDER UNDER 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 2002 AND 9014 APPROVING (I) BIDDING PROCEDURES, (II) CERTAIN BID PROTECTIONS, (III) FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING OF A SALE HEARING

Upon the motion, dated March 31, 2008 (the "Motion"),[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for orders under 11 U.S.C.  §§ 363 and 365 and Fed.  R.  Bankr.  P.  2002, 6004, 6006, and 9014 (a) approving (i) bidding procedures, (ii) certain bid protections, (iii) form and manner of sale notices, and (iv) sale hearing date (the "Sale Hearing") and (b) authorizing and approving (i) sale of substantially all of the Debtors' assets (the "Assets") free and clear of liens, claims, and encumbrances (the "Sale") to the Purchaser, (ii) assumption and assignment of certain executory contracts and unexpired leases, and (iii) assumption of certain liabilities or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") to the Purchaser or the Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchaser or the Successful Bidder; and the Court having reviewed the Motion; and the

---

[1]    The Debtors are:    (1) Creative Group, Inc.; (2) Animagic LLC; (3) Fangoria Entertainment, Inc.; (4) Nate the Great LLC; (5) Moe Greene Entertainment LLC; (6) Starlog Entertainment, Inc.; (7) Starlog Group, Inc.; (8) Starlog Licensing of America, Inc.; and (9) Tangerine LLC.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having considered the arguments of counsel at the hearing held on April 15, 2008 (the "Hearing"); and upon the record of the Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.　　The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.　　This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.　　The notice given by the Debtors of the Motion and the Hearing constitutes due and sufficient notice thereof.

D.　　The Debtors have articulated good and sufficient reasons for approving (i) the Bidding Procedures, (ii) the granting of certain bid protections as provided in the Agreement, (iii) the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Assumed Contracts and Assumed Leases, (iv) the form of notice of the Motion and the Sale Hearing to be distributed to creditors and other parties in interest, including prospective bidders, (v) the form of notice of the Cure Amounts and the assumption of the Assumed Contracts to be filed with the Court and served on parties to each Assumed Contract, and (vi) the scheduling of the Sale Hearing.

E.　　The Debtors' payment to the Purchaser (as set forth in the Agreement), of the Break-Up Fee (the "Bid Protection") (i) is an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (ii) is of substantial benefit to the Debtors' estates, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchaser notwithstanding that the proposed Sale is subject to higher or better offers for the Assets, (iv) was negotiated by the parties at arms' length and in good faith, and (v) is necessary

---

[3]　　Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

to ensure that the Purchaser will continue to pursue its proposed acquisition of the Assets. The Bid Protection was a material inducement for, and condition of, the Purchaser's entry into the Agreement. The Purchaser is unwilling to commit to hold open its offer to purchase the Assets under the terms of the Agreement unless it is assured of payment of the Bid Protection. Further, because the Bid Protection induced the Purchaser to research the value of the Acquired Assets and submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Purchaser has provided a benefit to the Debtors' estates which the Debtors believe will increase the likelihood that the price at which the Acquired Assets are sold will reflect their true worth. Finally, absent authorization of the Bid Protection, the Debtors believe that they may lose the opportunity to obtain the highest or otherwise best available offer for the Assets.

F. The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Assets.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Bidding Procedures, as set forth on <u>Exhibit 1</u> attached hereto and incorporated herein by reference as if fully set forth in this Order, are hereby approved and shall govern all proceedings relating to the Agreement and any Subsequent Bids (as defined in the Bidding Procedures) for the Assets in the Bidding Process.

2. The Debtors shall appoint an independent director (the "Independent Director") to the board of directors of each of the Debtors, who shall be reasonably acceptable to Signature Bank, Allied Capital Corporation and the Committee, to coordinate the Bidding Process and all due diligence to be conducted in respect thereof, and to act on behalf of and to perform all functions of the Debtors in connection with the Bidding Process.

3. The Debtors, in consultation with the Committee and Signature Bank: (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer, and (ii) may reject at any time, any bid (other than the Purchaser's bid) that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their

estates and creditors as determined by the Debtors and Committee. Notwithstanding the foregoing, the Debtors, in consultation with the Committee, and, Signature Bank, may in the exercise of their reasonable discretion, determine that a bid that is not otherwise a Qualified Bid is the highest and best bid for the Assets. The Debtors, in consultation with the Committee and Signature Bank, are authorized to terminate the Bidding Process or the Auction at any time if they determine that the Bidding Process will not maximize the value of the Assets to be realized by the Debtors' estates; provided, however that the Committee's rights, if any, to object to such termination are preserved.

4.      The Committee may object to the credit bid rights of either Signature Bank or Allied Capital Corporation, provided that an objection is filed with the Court on or before May 19, 2008. If any such objection is filed on or before May 19, 2008, the Court will conduct a hearing on or prior to June [9], 2008 to determine the validity of any credit bid rights unless the Committee and Signature Bank or Allied Capital Corporation (as appropriate) resolve the Committee's objection prior to such date. If the Committee does not timely object to the credit bid rights of Signature Bank or Allied Capital, the Committee shall have waived any objections to the extent, validity, priority or amount of the claims asserted by Signature Bank and/or Allied Capital Corporation.

5.      The Sale Hearing shall be held before the undersigned United States Bankruptcy Judge on June __, 2008 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at which time the Court shall consider the Motion, the Successful Bidder, and confirm the results of the Auction, if any.

6.      Objections to the Motion shall be filed and served no later than 4:00 p.m. (prevailing Eastern time) on June __, 2008 (the "Objection Deadline").

7.      The failure of any objecting person or entity to timely file its objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, or the Debtors' consummation and performance of the

Agreement (including the transfer of the Assets, Assumed Contracts and Assumed Leases free and clear of all Liens and Claims), if authorized by the Court.

8. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest (other than to Signature Bank, Allied Capital Corporation and the Committee, which notice may be by electronic mail) other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

9. The Bid Protection, as more fully described in the Agreement and on the record of the hearing on April __, 2008, is hereby approved. The Debtors' obligation to pay the Bid Protection, as provided by the Agreement, shall survive termination of the Agreement and, until paid, shall constitute an administrative expense pursuant to Bankruptcy Code Section 507(b) and the Debtors shall be authorized to pay the Bid Protection to the Purchaser in accordance with the terms of the Agreement without further order of this Court.

10. Notice of (a) the Motion, (b) the Sale Hearing, and (c) the proposed assumption and assignment of the Assumed Leases and Assumed Contracts to the Purchaser pursuant to the Agreement or to a Successful Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

(a) Notice Of Sale Hearing. Within five days after entry of this Order (the "Mailing Date"), the Debtors shall serve the Motion, the Agreement, the proposed Sale Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to the Assets; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) all parties to the Assumed Contracts and Assumed Leases; (v) the United States Attorney's office; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (ix) all entities

requesting notice pursuant to Fed. R. Bankr. P. 2002; and (viii) counsel to the Committee; (ix) counsel for Signature Bank; and (x) counsel for Allied Capital Corporation.

(b) <u>Sale Notice</u>. On or before the Mailing Date, the Debtors shall serve by first-class mail, postage prepaid, a notice of the Sale (the "Sale Notice"), substantially in the form annexed hereto as <u>Exhibit 2</u>, upon all other known creditors of the Debtors.

(c) <u>Cure Notice</u>. No later than 15 days after the entry of this Order, the Debtors shall file with the Court and serve on all nondebtor parties to the Assumed Contracts and Assumed Leases a notice (the "Cure Notice"), substantially in the form annexed hereto as <u>Exhibit 3</u>, of the cure amount necessary to assume the Assumed Contract or Assumed Lease (the "Cure Amount"). The nondebtor party to the Assumed Contract or Assumed Lease shall have ten days from the service of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure is required (with appropriate documentation in support thereof). If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or Assumed Lease or any other document, and the nondebtor party to the Assumed Contract or Assumed Lease shall be forever barred from asserting any other claims against the Debtors, the Purchaser, or the Successful Bidder (as appropriate), or the property of either of them, as to such Assumed Contract.

(d) <u>Assumption Notice</u>. Within two business days of the conclusion of the Auction, the Debtors shall cause a notice, substantially in the form of the notice attached hereto as <u>Exhibit 4</u>, to be sent to each nondebtor party to an Assumed Contract or Assumed Lease identifying the Successful Bidder. Any objection to the assumption and assignment of any Assumed Contract or Assumed Lease shall be filed no later than two business days prior to the Sale Hearing.

11. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12. Except as otherwise specifically set forth in this Order, the rights of all

parties-in-interest are hereby preserved in all respects.

13.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: April __, 2008
        New York, New York

_____
Honorable Robert D. Drain
United States Bankruptcy Judge

**<u>Exhibit 1</u>**
**Bidding Procedures**

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of all or substantially all of the assets (the "Assets") comprising the entire business of Creative Group, Inc., Animagic LLC, Fangoria Entertainment, Inc., Nate the Great LLC, Moe Greene Entertainment LLC, Starlog Entertainment, Inc., Starlog Group, Inc., Starlog Licensing of America, Inc., and Tangerine LLC (collectively, the "Sellers").

On April 18, 2008, the Sellers executed that certain Asset Purchase Agreement (the "Agreement") with Creative Group Acquisition Co. (the "Purchaser").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C.  §§ 101-1330, as amended (the "Bankruptcy Code").

On March 31, 2008, the Sellers filed a motion for orders under 11 U.S.C.  §§ 363 and 365 and Fed.  R.  Bankr.  P.  2002, 6004, 6006, and 9014 (a) approving (i) bidding procedures, (ii) certain bid protections, (iii) form and manner of sale notices, and (iv) sale hearing date and (b) authorizing and approving (i) sale of substantially all of the Debtors' assets free and clear of liens, claims, and encumbrances, (ii) assumption and assignment of certain executory contracts and unexpired leases, and (iii) assumption of certain liabilities (the "Motion").

On April [·], 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C.  § 105(a) And Fed.  R.  Bankr.  P.  2002 And 9014 Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of Sale Notices, And (iv) Sale Hearing Date (the "Bidding Procedures Order") approving the Bidding Procedures.  The Bidding Procedures Order set June [19], 2008 as the date the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Sellers to enter into the Agreement.   All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). For purposes of these Bidding Procedures, any action required to be taken by the Sellers shall be taken by the Independent Director (as defined in and pursuant to the Order approving these Bidding Procedures).

## Assets To Be Sold

The Assets proposed to be sold include substantially all of the assets owned by the Seller.

## "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Purchaser, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

## Free Of Any And All Claims And Interests

Except, with respect to the Purchaser, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Assets, or any portion thereof, to be acquired shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Liens and Claims"), such Liens and Claims to attach to the net proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Purchaser, Signature Bank and Allied Capital Corporation, must deliver (unless previously delivered) to the Sellers, who shall promptly deliver copies to the Official Committee of Unsecured Creditors (the "Committee"): (i) an executed confidentiality agreement substantially in the form attached hereto as Exhibit 1, (ii) current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Sellers and their financial advisor, and (iii) a preliminary (non-binding) written proposal regarding (a) the purchase price range, (b) any Assets expected to be excluded, (c) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite deposit, (d) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals, (e) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (f) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Sellers, in consultation with the Committee, determine (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement shall be deemed a "Qualified Bidder." As promptly as practicable, after a Potential Bidder delivers all of the materials required above, the Sellers, in consultation and with the consent of, the Committee,

shall determine, and shall notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Assets as provided below. Notwithstanding the foregoing, the Purchaser, Signature Bank and Allied Capital Corporation, for themselves or on behalf of their designee, assignee or affiliate, shall each be deemed a Qualified Bidder for purposes of the Bidding Process.

## Due Diligence

All due diligence shall be coordinated by the Sellers, and all requests for due diligence materials and related information shall be made to counsel for the Sellers, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Kenneth A. Rosen, Esq. (krosen@lowenstein.com), Sharon Levine, Esq. (slevine@lowenstein.com), and S. Jason Teele, Esq. (steele@lowenstein.com), or any other professional retained by the Sellers and as directed by the Sellers.

The Sellers shall afford each Qualified Bidder due diligence access to the Assets. Due diligence access may include, but is not limited to, management presentations as may be scheduled by the Sellers, meetings with the Sellers' employees during normal business hours, which shall be scheduled so as not to interfere with such employee's work, meetings with significant customers of the Sellers at times and locations agreed to by such customers, on-site inspections, access to data rooms, accounting due diligence, and such other matters which a Qualified Bidder may reasonably request; provided, however, that the Sellers, in their reasonable discretion, may permit Potential Bidders to conduct limited due diligence, provided such Potential Bidders execute a confidentiality agreement substantially in the form attached hereto as Exhibit 1, for the limited purpose of permitting such Potential Bidders to determine whether or not they desire to submit a Qualified Bid.

The Sellers shall coordinate all reasonable requests for information and due diligence access from Qualified Bidders. Any additional due diligence shall not continue after the Bid Deadline, except as otherwise consented to by the Sellers. The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. The Sellers shall not be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, the Bidding Process or the Auction (as defined herein), except, as to the Successful Bidder, as expressly stated in the definitive agreement with such Successful Bidder approved by the Bankruptcy Court.

## **Bid Deadline**

A Qualified Bidder (other than the Purchaser, Signature Bank and Allied Capital Corporation) who desires to make a bid shall deliver written copies of its bid to: (i) counsel for the Debtors, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Kenneth A. Rosen, Esq. krosen@lowenstein.com and Sharon L. Levine, Esq. slevine@lowenstein.com, S. Jason Teele, Esq. steele@lowenstein.com, and Kimberly Goldberg, Esq. kgoldberg@lowenstein.com, (ii) counsel for Signature Bank, Duane Morris LLP, 1540 Broadway, New York, NY 10036-4086, Attention: Laurence S. Hughes, Esq., lshughes@duanemorris.com, and Lawrence Kotler, Esq., lkotler@duanemorris.com, (iii) counsel for the Purchaser, Nixon Peabody LLP, 555 West Fifth Street, 46th Floor, Los Angeles,

California 90013, Attention: David M. Tamman, dtamman@nixonpeabody.com, (iv) counsel to Allied Capital Corporation, Greenberg Traurig, LLP, 200 Park Ave., New York, New York 10166, Attention: Nancy A. Mitchell, Esq., MitchellN@gtlaw.com and John W. Weiss, Esq., WeissJW@gtlaw, provided that Allied Capital Corporation is not a bidder, (v) counsel for the Official Committee of Unsecured Creditors, Arent Fox LLP, 1675 Broadway, New York, New York 10019, Attention: Schuyler Carroll, Esq., Carroll.Schuyler@arentfox.com, and (vi) the United States Trustee for Region 2, 33 Whitehall Street, Suite 2100, New York, New York 10004, Attention: Greg Zipes, greg.zipes@usdoj.gov, so that such bids are actually received on or before 11:00 a.m. (prevailing Eastern time) on May 30, 2008 (the "Bid Deadline").

## Bid Requirements

All bids must include the following documents: (i) a letter stating that the bidder's offer is irrevocable for the period set forth in the Bidding Procedures, (ii) an executed copy of the Agreement marked to show amendments and modifications to the agreement, purchase price, and proposed schedules, (iii) other than a bid submitted by Allied Capital Corporation, a good faith deposit of ten percent (10%) of the aggregate bid amount, or in the case of Purchaser, a deposit of $100,000 (the "Good Faith Deposit"), and (iv) other than a bid submitted by Allied Capital Corporation, satisfactory written evidence of a commitment for financing or other ability to consummate the proposed transaction.

## Qualified Bids

To be deemed a "Qualified Bid," a bid must be received by the Bid Deadline and, among other things, (i) must be on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Sellers than those contained in the Agreement, (ii) must not be contingent on obtaining financing or the outcome of unperformed due diligence beyond the contingencies set forth in the Agreement, (iii) must have a value (inclusive of any credit bid component) greater than the purchase price reflected in the

Agreement plus the amount of the Break-Up Fee, (iv) must not be conditioned on bid protection, other than those contemplated in the Bidding Procedures, (v) must contain acknowledgements and representations as set forth in the Bidding Procedures, and (vi) include a commitment to consummate the purchase or the Purchased Assets within not more than 15 days after entry of a Bankruptcy Court order approving such purchase. The Sellers, in consultation with the Committee, shall have the right to deem a bid a Qualified Bid, if such bid does not conform to one or more of the aforementioned requirements, provided however, that such bid must have a value (inclusive of any credit bid component) greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, taking into account all material terms of any such bid. Each Qualified Bid other than that of the Purchaser shall be called a "Subsequent Bid."

## **Bid Protection**

Recognizing the Purchaser's expenditure of time, energy, and resources, the Sellers have agreed to provide certain bidding protections to the Purchaser. Specifically, the Sellers have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed and, therefore, is entitled to be selected as the Purchaser. As a result, the Sellers have agreed that if the Sellers sell the Assets to a Successful Bidder other than the Purchaser, the Sellers shall, in certain circumstances, pay to the Purchaser a Break-Up Fee equal to three percent (3%) of the Aggregate Cash Consideration (as defined in the Agreement). The payment of the Break-Up Fee shall be governed by the provisions of the Agreement and the Bidding Procedures Order. The entire Break-Up Fee shall be payable to Scorpion Capital Corporation and no portion of the Break-Up Fee will be paid to any employee, officer, director or insider (as defined in section 101(31) of the Bankruptcy Code) of the Sellers.

## **Auction**

If the Sellers receive at least one Qualified Bid in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Purchased Assets at 10:00 a.m. (prevailing

Eastern time) on June 13, 2008 at the offices of Lowenstein Sandler PC, 1251 Avenue of the Americas, 18th Floor, New York, New York 10022, in accordance with the following procedures: (i) attendance at the Auction will be limited to the Sellers, the Purchaser, any representative of the Committee, any representative of Signature Bank any representative of Allied Capital Corporation (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid, and only the Purchaser, and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction; (ii) at least two business days prior to the Auction, each Qualified Bidder with a Qualified Bid (except Signature Bank or Allied Capital Corporation, in the event that either such party makes a credit bid) must inform the Sellers and Committee whether it intends to participate in the Auction and at least one business day prior to the Auction, the Committee will provide such bidders copies of the Qualified Bid which the Committee believes is the highest or otherwise best offer for the Purchased Assets, (iii) all Qualified Bidders will be entitled to be present for all Subsequent Bids, and (iv) bidding at the Auction will begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $100,000, and conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), the Sellers shall take into account the Break-Up Fee that may be payable to the Purchaser under the Agreement.

### Credit Bids

At the Auction, pursuant to 11 U.S.C. § 363(k), Signature, for itself or on behalf of its designee, assignee or affiliate, shall have the right to credit bid the entire amount of its secured claim ($16,559,260.16).

At the auction, pursuant to 11 U.S.C. § 363(k), Allied Capital Corporation, for itself or on behalf of its designee, assignee or affiliate, shall have the right to credit bid the entire amount of its subordinated secured claim ($17,146,456.39, plus any expenses allowed under that certain 12% subordinated secured note dated as of September 12, 2006 and issued by each of the Sellers).

## Selection Of Successful Bid

As soon as practicable after the conclusion of the Auction, the Sellers will, in consultation with the Committee (and, to the extent they are not bidders, Signature Bank and Allied Capital Corporation), review each Qualified Bid and identify the highest or otherwise best offer for the Purchased Assets (the "Successful Bid") and the bidder making such bid (the "Successful Bidder"). The Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "Sale Hearing"). If, after an Auction in which the Purchaser: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement, and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to the Successful Bid.

## The Sale Hearing

The Sale Hearing is currently scheduled for June [19], 2008 at 10:00 a.m. (prevailing Eastern time) before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Room 610, New York, New York 10004. The Sale Hearing may be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing.

If no Qualified Bids other than that of the Purchaser are received, the Sellers will proceed with the sale of the Purchased Assets to the Purchaser following entry of the order

approving the Sale. If the Sellers receive additional Qualified Bids, then, at the Sale Hearing, the Sellers shall seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid" and such bidder, the "Alternate Bidder"). A bid will not be deemed accepted by the Sellers unless and until approved by the Bankruptcy Court. Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will effectuate a sale to the Alternate Bidder without further order of the Bankruptcy Court.

## Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account by counsel for the Sellers and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date"). Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).

If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers shall not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Sellers. On the Return Date, the Seller shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

## Reservation Of Rights

The Sellers, after consultation with the Committee (and Signature Bank and Allied Capital Corporation if such parties are not then bidders): (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer, and (ii) may reject at any time, any

bid (other than the Purchaser's bid) that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates and creditors as determined by the Sellers. Notwithstanding the foregoing, the Sellers, after consultation with and the Committee, may in the exercise of their reasonable discretion, determine that a bid that is not otherwise a Qualified Bid is the highest and best bid for the Assets.

# **EXHIBIT 1 TO BIDDING PROCEDURES**

# NONDISCLOSURE AGREEMENT

This Nondisclosure Agreement (this "Agreement") by and between _____, a _____ corporation (the "Recipient"), and Creative Group, Inc., Animagic LLC, Fangoria Entertainment, Inc., Nate the Great LLC, Moe Greene Entertainment LLC, Starlog Entertainment, Inc., Starlog Group, Inc., Starlog Licensing of America, Inc., and Tangerine LLC (collectively, the "Provider") (each a "Party" and collectively, the "Parties"), is dated as of the latest date set forth on the signature page hereto.

14. **General**.  In connection with the consideration of a possible negotiated transaction (a "Possible Transaction") between the Parties, Provider is prepared to make available to the Recipient certain "Diligence Material" (as defined in Section 2 below) in accordance with the provisions of this Agreement, and both Parties agree to take or abstain from taking certain other actions as hereinafter set forth.

15. **Definitions**.  (a) The term "Diligence Material" means information concerning the Provider which has been or is furnished to the Recipient or its Representatives in connection with the Recipient's evaluation of a Possible Transaction, including its business, financial condition, operations, assets and liabilities, and includes all notes, analyses, compilations, studies, interpretations or other documents prepared by the Recipient or its Representatives which contain or are based upon, in whole or in part, the information furnished by the Recipient hereunder.  The term Diligence Material does not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by the Recipient or its Representatives in breach of this Agreement, (ii) was within the Recipient's possession prior to its being furnished to the Recipient by or on behalf of the Provider, provided that the source of such information was not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, the Provider with respect to such information, or (iii) is or becomes available to the Recipient on a non-confidential basis from a source other than the Provider or its Representatives, provided that such source is not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of

confidentiality to, the Provider with respect to such information.

(b) The term "Representatives" shall include the directors, officers, employees, agents, partners or advisors (including, without limitation, attorneys, accountants, consultants, bankers and financial advisors) of the Recipient or the Provider, as applicable.

(c) The term "Person" includes the media and any corporation, partnership, group, individual or other entity.

16.    **Use of Diligence Material**.  The Recipient shall, and it shall cause its Representatives to, use the Diligence Material solely for the purpose of evaluating a Possible Transaction, keep the Diligence Material confidential, and, subject to Section 5, will not, and will cause its Representatives not to, disclose any of the Diligence Material in any manner whatsoever; provided, however, that any of such information may be disclosed to the Recipient's Representatives who need to know such information for the sole purpose of helping the Recipient evaluate a Possible Transaction.  The Recipient agrees to be responsible for any breach of this Agreement by any of the Recipient's Representatives.  This Agreement does not grant the Recipient or any of its Representatives any license to use the Provider's Diligence Material except as provided herein.

17.    **Legally Required Disclosure**.  If the Recipient or its Representatives are requested or required (by oral questions, interrogatories, other requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Diligence Material, the Recipient shall provide the Provider with prompt written notice of any such request or requirement together with copies of the material proposed to be disclosed so that the Provider may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.  If, in the absence of a protective order or other remedy or the receipt of a waiver by the Provider, the Recipient or its Representatives are nonetheless legally compelled to disclose Diligence Material or otherwise be liable for contempt or suffer other censure or penalty, the Recipient or its Representatives may, without liability hereunder, disclose to such requiring Person only that portion of such Diligence

Material or any such facts which the Recipient or its Representatives is legally required to disclose, provided that the Recipient and/or its Representatives cooperate with the Provider to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded such Diligence Material or such facts by the Person receiving the material.

18.    **Return or Destruction of Diligence Material**.  If Recipient decides that it does not wish to proceed with a Possible Transaction, it will promptly inform the Provider of that decision.  In that case, or at any time upon the request of the Provider for any reason, the Recipient will, and will cause its Representatives to, within five business days of receipt of such notice, destroy or return all Diligence Material in any way relating to the Provider or its products, services, employees or other assets or liabilities, and no copy or extract thereof (including electronic copies) shall be retained, except that Recipient's outside counsel may retain one copy to be kept confidential and used solely for archival purposes.  The Recipient shall provide to the Provider a certificate of compliance with the previous sentence signed by an executive officer of the Recipient.  Notwithstanding the return or destruction of the Diligence Material, the Recipient and its Representatives will continue to be bound by the Recipient's obligations hereunder with respect to such Diligence Material.

19.    **No Solicitation/Employment**.  The Recipient will not, within one year from the date of this Agreement, directly or indirectly solicit the employment or consulting services of or employ or engage as a consultant any of the officers or employees of the Provider, so long as they are employed by the Provider and for three months after they cease to be employed by  Provider.  The Recipient is not prohibited from soliciting by means of a general advertisement not directed at (i) any particular individual or (ii) the employees of the Provider generally.

20.    **Maintaining Privilege**.  If any Diligence Material includes materials or information subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Recipient understands and agrees that the Recipient and the Provider have a

commonality of interest with respect to such matters and it is the desire, intention and mutual understanding of the Parties that the sharing of such material by Provider is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Diligence Material provided by the Recipient that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine.

21. **Not a Transaction Agreement**. The Recipient understands and agrees that no contract or agreement providing for a Possible Transaction exists between the Parties unless and until a final definitive agreement for a Possible Transaction has been executed and delivered, and the Recipient hereby waives, in advance, any claims (including, without limitation, breach of contract) relating to the existence of a Possible Transaction unless and until the shall have entered into a final definitive agreement for a Possible Transaction. The Recipient also agrees that, unless and until a final definitive agreement regarding a Possible Transaction has been executed and delivered, neither Party will be under any legal obligation of any kind whatsoever with respect to such Possible Transaction by virtue of this Agreement except for the matters specifically agreed to herein. Either Party may terminate discussions and negotiations with the other Party at any time.

22. **No Representations or Warranties; No Obligation to Disclose**. The Recipient understands and acknowledges that neither the Provider nor its Representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of the Diligence Material furnished by or on behalf of the Provider and shall have no liability to the Recipient, its Representatives or any other Person relating to or resulting from the use of the Diligence Material furnished to the Recipient or its Representatives or any errors therein or omissions therefrom. As to the information delivered to the Recipient, the Provider will only be liable for those representations or warranties which are made in a final definitive agreement

regarding a Possible Transaction, when, as and if executed, and subject to such limitations and restrictions as may be specified therein. Nothing in this Agreement shall be construed as obligating a the Provider to provide, or to continue to provide, any information to any Person.

23. **Modifications and Waiver**. No provision of this Agreement can be waived or amended in favor of either Party except by written consent of the other Party, which consent shall specifically refer to such provision and explicitly make such waiver or amendment. No failure or delay by either Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder.

24. **Remedies**. Recipient understands and agrees that money damages would not be a sufficient remedy for any breach of this Agreement by Recipient or any of its Representatives and that Provider shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach or threat thereof. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement, but shall be in addition to all other remedies available at law or equity to Provider.

25. **Legal Fees**. In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that either Recipient or its Representatives has breached this Agreement, then the Recipient shall be liable and pay to the Provider the reasonable legal fees and costs incurred in connection with such litigation, including any appeal therefrom.

26. **Governing Law**. This Agreement is for the benefit of the Provider and shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely within such State.

27. **Severability**. If any term, provision, covenant or restriction contained in this Agreement is held by any court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants or restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated, and if a covenant or provision is determined to be unenforceable by reason of its

extent, duration, scope or otherwise, then the Parties intend and hereby request that the court or other authority making that determination shall only modify such extent, duration, scope or other provision to the extent necessary to make it enforceable and enforce them in their modified form for all purposes of this Agreement.

28. **Term**. This Agreement shall terminate one year after the date of this Agreement.

29. **Entire Agreement**. This Agreement contains the entire agreement between the Parties regarding the subject matter hereof and supersedes all prior agreements, understandings, arrangements and discussions between the Parties regarding such subject matter.

30. **Counterparts**. This Agreement may be signed in counterparts, each of which shall be deemed an original but all of which shall be deemed to constitute a single instrument.

**IN WITNESS WHEREOF**, each of the undersigned entities has caused this Agreement to be signed by its duly authorized representatives as of the date written below.

**PROVIDER:**

**Creative Group, Inc., Animagic LLC, Fangoria Entertainment, Inc., Nate the Great LLC, Moe Greene Entertainment LLC, Starlog Entertainment, Inc., Starlog Group, Inc., Starlog Licensing of America, Inc., and Tangerine LLC**
1601 Broadway, 10th Floor
New York, New York 10019

By: _____
Name: _____
Title _____

**RECIPIENT:**

**[COMPANY NAME]**

[Address]
By: _____
Name: _____
Title _____

## Exhibit 2
## Sale Notice

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR-4963)
Sharon L. Levine, Esq. (SL-2109)
S. Jason Teele, Esq. (SJT 7390)
Kimberly Goldberg (KG 0117)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to Debtors and Debtors in Possession*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Creative Group., Inc., *et al*.,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 08-10975 (RDD)<br>(Jointly Administered) |

<u>**NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION**</u>

PLEASE TAKE NOTICE OF THE FOLLOWING:

Pursuant to the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002 And 9014 Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of Sale Notices, And (iv) Sale Hearing Date (the "Bidding Procedures Order") entered by the

---

[1]     The Debtors are: (1) Creative Group, Inc.; (2) Animagic LLC; (3) Fangoria Entertainment, Inc.; (4) Nate the Great LLC; (5) Moe Greene Entertainment LLC; (6) Starlog Entertainment, Inc.; (7) Starlog Group, Inc.; (8) Starlog Licensing of America, Inc.; and (9) Tangerine LLC.

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on April __, 2008, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") are offering substantially all of their assets (the "Assets") for sale. Capitalized terms used but not otherwise defined in this notice shall have the meanings ascribed to them in the Bidding Procedures.

All interested parties are invited to make an offer to purchase the Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures"). Pursuant to the Bidding Procedures, the Debtors may conduct an auction for the Assets (the "Auction") beginning at 10:00 a.m. on June 13, 2008 at the offices of Lowenstein Sandler PC, 1251 Avenue of the Americas, 18th Floor, New York, New York 10022

Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order. A copy of the Bidding Procedures is attached hereto as Exhibit 1.

The Debtors have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. Notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a bid by a Qualified Bidder, the Good Faith Deposits of all bidders will be retained by the Debtors, and all bids will remain open until two business days following the closing of the Sale the "Return Date"); provided, however, that if the Debtors determine not to sell the Assets, the Good Faith Deposits of all Qualified Bidders will be returned by the Debtors within 48 hours of the Auction. Upon failure to consummate the sale of the Assets because of a breach or failure on the part of the Successful Bidder, the Debtors may select in their business judgment the next highest or otherwise best Qualified Bid to be the Successful Bid without further order of the Court. On the Return Date, the Seller will return the Good Faith Deposits of all Qualified Bidders, except the Successful Bidders, with accrued interest.

The Debtors may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid any bid which, in the Debtors' sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code,

the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, its estate, and its creditors.

A hearing to approve the Sale of the Assets to the highest and best bidder will be held on June __, 2008 at 10:00 a.m. Prevailing Eastern Time at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, before the Honorable Robert D. Drain, United States Bankruptcy Judge. The hearing on the Sale my be adjourned without notice other than an adjournment in open court.

This notice is qualified in its entirety by the Bidding Procedures Order.

Dated:  April __, 2008

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: */s/ DRAFT*
Kenneth A.  Rosen, Esq.  (KR-4963)
Sharon L.  Levine, Esq.  (SL-2109)
S.  Jason Teele, Esq.  (SJT 7390)
Kimberly Goldberg (KG 0117)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, NJ 07068
Tel:  (973) 597-2500
Fax: (973) 597-2400

*Counsel to Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**
**Cure Notice**

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR-4963)
Sharon L. Levine, Esq. (SL-2109)
S. Jason Teele, Esq. (SJT 7390)
Kimberly Goldberg (KG 0117)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Creative Group., Inc., *et al.*,[1] | Case No. 08-10975 (RDD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY**
**CONTRACT OR UNEXPIRED LEASE TO BE ASSUMED AND ASSIGNED**

PLEASE TAKE NOTICE THAT:

Pursuant to the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002 And

9014 Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of

Sale Notices, And (iv) Sale Hearing Date (the "Bidding Procedures Order") entered by the

---

[1]    The Debtors are: (1) Creative Group, Inc.; (2) Animagic LLC; (3) Fangoria
Entertainment, Inc.; (4) Nate the Great LLC; (5) Moe Greene Entertainment LLC; (6) Starlog
Entertainment, Inc.; (7) Starlog Group, Inc.; (8) Starlog Licensing of America, Inc.; and (9)
Tangerine LLC.

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on April __, 2008, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby provides notice of its intent to assume and assign the executory contract or unexpired lease (the "Assumed Contract or Lease") listed on Exhibit 1 hereto to the Purchaser or Successful Bidder with respect to the Debtors' assets. Capitalized terms used but not otherwise defined in this notice shall have the meanings ascribed to them in the Bidding Procedures Order.

On the Closing Date, or as soon thereafter as reasonably practicable, the Debtors will pay the amount that the Debtors' records reflect is owing for prepetition arrearages as set forth on Exhibit 1 (the "Cure Amount"). The Debtors' records reflect that all postpetition amounts owing under the Assumed Contract of Lease have been paid and will continue to be paid until the assumption and assignment of the Assumed Contract or Lease and that, other than the Cure Amount, there are no other defaults under the Assumed Contract or Lease.

31.     Objections, if any, to the proposed Cure Amount must (a) be in writing, (b) state with specificity the cure asserted to be required, (c) include appropriate documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, (e) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (f) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, and (g) be served in hard copy form within ten days of service of this Notice upon (i) the Debtors, 1601 Broadway, 10th Floor, New York, New York 10019 (Attn: Joseph V. Avallone), (ii) counsel for the Debtors, Lowenstein Sandler PC, 1251 Avenue of the Americas, 18th Floor, New York, New York 10022 (Attn: Kenneth A. Rosen, Esq., Sharon Levine, Esq. and S. Jason Teele, Esq., (iii) counsel for the Purchaser, Nixon Peabody LLP, 555 West Fifth Street, 46th

Floor, Los Angeles, California 90013, Attention: David M. Tamman, (iv) counsel for Signature Bank, Duane Morris LLP, 1540 Broadway, New York, NY 10036-4086, Attention: Laurence S. Hughes, Esq. and Lawrence Kotler, Esq., (v) counsel for Allied Capital Corporation, Greenberg Traurig, LLP, 200 Park Ave., New York, New York 10166, Attention: Nancy A. Mitchell, Esq., and John W. Weiss, Esq., (vi) counsel for the Official Committee of Unsecured Creditors, _____, or the Sale Agent (as appropriate), Getzler Henrich & Associates, LLC, 295 Madison Avenue, New York, New York 10017, Attention: Mark Podgainey, and (vii) the United States Trustee for Region 2, 33 Whitehall Street, Suite 2100, New York, New York 10004, Attention: Greg Zipes, Esq.

33.    To be considered timely, all objections must be filed and served in accordance with the foregoing paragraph on or before ten (10) days from the date of this Notice.

33.    If an objection to the Cure Amount is timely filed, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at such date and time as the Court may schedule. A hearing regarding the Cure Amount, if any, may be continued at the sole discretion of the Debtors until after the Closing Date.

34.    The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the sale of the Assets, or the Debtors' consummation and performance of the Agreement (including the transfer of the Assets and the Assumed Contracts and Assumed Leases free and clear of all Liens and Claims), if authorized by the Court.

35.    Prior to the Closing Date, the Debtors may amend its decision with respect to the assumption and assignment of the Assumed Contract of Lease and provide a new notice amending the information provided in this Notice.

Dated:  April __, 2008

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: _/s/ DRAFT_____
Kenneth A.  Rosen, Esq.  (KR-4963)
Sharon L.  Levine, Esq.  (SL-2109)
S.  Jason Teele, Esq.  (SJT 7390)
Kimberly Goldberg (KG 0117)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, NJ 07068
Tel:  (973) 597-2500
Fax: (973) 597-2400

_Counsel to Debtors and Debtors in Possession_

# Exhibit 4
## Assumption Notice

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR-4963)
Sharon L. Levine, Esq. (SL-2109)
S. Jason Teele, Esq. (SJT 7390)
Kimberly Goldberg (KG 0117)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Creative Group., Inc., *et al*.,[6] | Case No. 08-10975 (RDD)<br>(Jointly Administered) |
| Debtors. | |

**NOTICE OF ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACT OR UNEXPIRED LEASE**

PLEASE TAKE NOTICE THAT:

Pursuant to the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002 And

9014 Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of

Sale Notices, And (iv) Sale Hearing Date (the "Bidding Procedures Order") entered by the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

---

[6]     The Debtors are: (1) Creative Group, Inc.; (2) Animagic LLC; (3) Fangoria
Entertainment, Inc.; (4) Nate the Great LLC; (5) Moe Greene Entertainment LLC; (6) Starlog
Entertainment, Inc.; (7) Starlog Group, Inc.; (8) Starlog Licensing of America, Inc.; and (9)
Tangerine LLC.

on April __, 2008, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") have accepted the bid of [____] (the "Purchaser") for the purchase of substantially all of the Debtors' assets (the "Assets"). The terms of the bid are set forth in the Asset Purchase Agreement, dated as of _____ __, 2008 between the Debtors and the Purchaser (the "Agreement"). Capitalized terms used but not otherwise defined in this notice shall have the meaning ascribed to them in the Bidding Procedures Order.

36.     Pursuant to the terms of the Agreement, the Debtors will seek to assume and assign the contracts and leases listed on Exhibit 1 hereto (the "Assigned Contract or Lease") at the hearing to be held at 10:00 a.m. (Prevailing Eastern Time) on June __, 2008 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

37.     Objections, if any, to the assumption or assignment of an Assigned Contract or Lease must (a) be in writing, (b) state with specificity the cure asserted to be required, (c) include appropriate documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, (e) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (f) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, and (g) be served in hard copy form within ten days of service of this Notice upon (i) the Debtors, 1601 Broadway, 10th Floor, New York, New York 10019 (Attn: Joseph V. Avallone), (ii) counsel for the Debtors, Lowenstein Sandler PC, 1251 Avenue of the Americas, 18th Floor, New York, New York 10022 (Attn: Kenneth A. Rosen, Esq., Sharon Levine, Esq. and S. Jason Teele, Esq., (iii) counsel for the

Purchaser, Nixon Peabody LLP, 555 West Fifth Street, 46th Floor, Los Angeles, California 90013, Attention: David M. Tamman, (iv) counsel for Signature Bank, Duane Morris LLP, 1540 Broadway, New York, NY 10036-4086, Attention: Laurence S. Hughes, Esq. and Lawrence Kotler, Esq., (v) counsel for Allied Capital Corporation, Greenberg Traurig, LLP, 200 Park Ave., New York, New York 10166, Attention: Nancy A. Mitchell, Esq., and John W. Weiss, Esq., (vi) counsel for the Official Committee of Unsecured Creditors, _____ or the Sale Agent (as appropriate), Getzler Henrich & Associates, LLC, 295 Madison Avenue, New York, New York 10017, Attention: Mark Podgainey, and (vii) the United States Trustee for Region 2, 33 Whitehall Street, Suite 2100, New York, New York 10004, Attention: Greg Zipes, Esq.

38.     If an objection to the assumption or assignment of an Assigned Contract or Lease is timely filed, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at the Sale Hearing or such date and time as the Court may schedule.

39.     Objections to the assumption or assignment of an Assigned Contract or Lease must be filed and served in accordance with the foregoing paragraph on or before two (2) days prior to the Sale Hearing.

40.     Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the Cure Amount set forth in the Cure Notice shall be paid in accordance with the terms of the Sale Order. Further, there is adequate assurance of the Purchaser's future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Purchaser.

Dated:  April __, 2008

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: _/s/ DRAFT_____
Kenneth A.  Rosen, Esq.  (KR-4963)
Sharon L.  Levine, Esq.  (SL-2109)
S.  Jason Teele, Esq.  (SJT 7390)
Kimberly Goldberg (KG 0117)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, NJ 07068
Tel:  (973) 597-2500
Fax: (973) 597-2400

_Counsel to Debtors and Debtors in Possession_