**Exhibit D**
**(Blackline Of Revised Bidding Procedures)**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of all or substantially all of the assets (the "Assets") comprising the entire business of Creative Group, Inc., Animagic LLC, Fangoria Entertainment, Inc., Nate the Great LLC, Moe Greene Entertainment LLC, Starlog Entertainment, Inc., Starlog Group, Inc., Starlog Licensing of America, Inc., and Tangerine LLC (collectively, the "Sellers").

On April 18, 2008, the Sellers executed that certain Asset Purchase Agreement (the "Agreement") with Creative Group Acquisition Co. (the "Purchaser"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

On March 31, 2008, the Sellers filed a motion for orders under 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) approving (i) bidding procedures, (ii) certain bid protections, (iii) form and manner of sale notices, and (iv) sale hearing date and (b) authorizing and approving (i) sale of substantially all of the Debtors' assets free and clear of liens, claims, and encumbrances, (ii) assumption and assignment of certain executory contracts and unexpired leases, and (iii) assumption of certain liabilities (the "Motion").

On April [·], 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002 And 9014 Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of Sale Notices, And (iv) Sale Hearing Date (the "Bidding Procedures Order") approving the Bidding Procedures. The Bidding Procedures Order set June [19], 2008 as the date the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Sellers to enter into the Agreement. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). For purposes of these Bidding Procedures, any action required to be taken by the Sellers shall be taken by the Independent Director (as defined in and pursuant to the Order approving these Bidding Procedures).

### Assets To Be Sold

The Assets proposed to be sold include substantially all of the assets owned by the Seller.

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Purchaser, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

### Free Of Any And All Claims And Interests

Except, with respect to the Purchaser, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Assets, or any portion thereof, to be acquired shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Liens and Claims"), such Liens and Claims to attach to the net proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Purchaser, Signature Bank and Allied Capital Corporation, must deliver (unless previously delivered) to the Sellers, who shall promptly deliver copies to the Official Committee of Unsecured Creditors (the "Committee"): (i) an executed confidentiality agreement substantially in the form attached hereto as <u>Exhibit</u> 1, (ii) current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Sellers and their financial advisor, and (iii) a preliminary (non-binding) written proposal regarding (a) the purchase price range, (b) any Assets expected to be excluded, (c) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite deposit, (d) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals, (e) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (f) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Sellers, in consultation with~~, and the consent of,~~ the Committee, determine (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement shall be deemed a "Qualified Bidder." As promptly as practicable, after a Potential Bidder delivers all of the materials required above, the Sellers, in consultation <u>and</u> with~~, and~~ <u>the</u> consent of, the

Committee, shall determine, and shall notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Assets as provided below.  Notwithstanding the foregoing, the Purchaser, Signature Bank and Allied Capital Corporation, for themselves or on behalf of their designee, assignee or affiliate, shall each be deemed a Qualified Bidder for purposes of the Bidding Process.

### Due Diligence

All due diligence shall be coordinated by the ~~Committee~~Sellers, and all requests for due diligence materials and related information shall be made to counsel for the ~~Committee, Arent Fox LLP, 1675 Broadway, New York, New York 10019, Attention: Schuyler Carroll, Esq. (~~Sellers, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Kenneth A. Rosen, Esq. (krosen@lowenstein.com), Sharon Levine, Esq. (slevine@lowenstein.com), and S. Jason Teele, Esq. (steele@lowenstein.com), or any other professional retained by the ~~Committee~~Sellers and as directed by the ~~Committee)~~Sellers.

The Sellers~~, through the Committee,~~ shall afford each Qualified Bidder due diligence access to the Assets.  Due diligence access may include, but is not limited to, management presentations as may be scheduled by the Sellers~~, access to data rooms, on site inspections~~, meetings with the Sellers' employees during normal business hours, which shall be scheduled so as not to interfere with such employee's work, meetings with significant customers of the Sellers at times and locations agreed to by such customers, on-site inspections, access to data rooms, accounting due diligence, and such other matters which a Qualified Bidder may reasonably request; provided, however, that the Sellers, in their reasonable discretion, may permit Potential Bidders to conduct limited due diligence, provided such Potential Bidders execute a confidentiality agreement substantially in the form attached hereto as Exhibit 1, for the limited purpose of permitting such Potential Bidders to determine whether or not they desire to

submit a Qualified Bid. ~~The Sellers shall designate an employee or other representative to coordinate, with the Committee,~~

The Sellers shall coordinate all reasonable requests for ~~additional~~ information and due diligence access from Qualified Bidders. Any additional due diligence shall not continue after the Bid Deadline, except as otherwise consented to by the Sellers. The ~~Committee~~Sellers may, in ~~its~~their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. The ~~Committee~~Sellers shall not be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders ~~who make an acceptable preliminary proposal~~.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, the Bidding Process or the Auction (as defined herein), except, as to the Successful Bidder, as expressly stated in the definitive agreement with such Successful Bidder approved by the Bankruptcy Court.

**Bid Deadline**

A Qualified Bidder (other than the Purchaser, Signature Bank and Allied Capital Corporation) who desires to make a bid shall deliver written copies of its bid to: (i) counsel for the Debtors, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Kenneth A. Rosen, Esq. krosen@lowenstein.com and Sharon L. Levine, Esq. slevine@lowenstein.com, S. Jason Teele, Esq. steele@lowenstein.com, and Kimberly Goldberg, Esq. kgoldberg@lowenstein.com, (ii) counsel for Signature Bank, Duane Morris

LLP, 1540 Broadway, New York, NY 10036-4086, Attention: Laurence S. Hughes, Esq., lshughes@duanemorris.com, and Lawrence Kotler, Esq., lkotler@duanemorris.com, (iii) counsel for the Purchaser, Nixon Peabody LLP, 555 West Fifth Street, 46th Floor, Los Angeles, California 90013, Attention: David M. Tamman, dtamman@nixonpeabody.com, (iv) counsel to Allied Capital Corporation, Greenberg Traurig, LLP, 200 Park Ave., New York, New York 10166, Attention: Nancy A. Mitchell, Esq., MitchellN@gtlaw.com and John W. Weiss, Esq., WeissJW@gtlaw, provided that Allied Capital Corporation is not a bidder, (v) counsel for the Official Committee of Unsecured Creditors, Arent Fox LLP, 1675 Broadway, New York, New York 10019, Attention: Schuyler Carroll, Esq., Carroll.Schuyler@arentfox.com, and (vi) the United States Trustee for Region 2, 33 Whitehall Street, Suite 2100, New York, New York 10004, Attention: Greg Zipes, greg.zipes@usdoj.gov, so that such bids are actually received on or before 11:00 a.m. (prevailing Eastern time) on May 30, 2008 (the "Bid Deadline").

## Bid Requirements

All bids must include the following documents: (i) a letter stating that the bidder's offer is irrevocable for the period set forth in the Bidding Procedures, (ii) an executed copy of the Agreement marked to show amendments and modifications to the agreement, purchase price, and proposed schedules, (iii) other than a bid submitted by Allied Capital Corporation, a good faith deposit of ten percent (10%) of the aggregate bid amount, or in the case of Purchaser, a deposit of $100,000 (the "Good Faith Deposit"), and (iv) other than a bid submitted by Allied Capital Corporation, satisfactory written evidence of a commitment for financing or other ability to consummate the proposed transaction.

## Qualified Bids

To be deemed a "Qualified Bid," a bid must be received by the Bid Deadline and, among other things, (i) must be on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Sellers than those contained in the

Agreement, (ii) must not be contingent on obtaining financing or the outcome of unperformed due diligence beyond the contingencies set forth in the Agreement, (iii) must have a value (inclusive of any credit bid component) greater than the purchase price reflected in the Agreement plus the amount of the Break-Up Fee, (iv) must not be conditioned on bid ~~protections~~protection, other than those contemplated in the Bidding Procedures, (v) must contain acknowledgements and representations as set forth in the Bidding Procedures, and (vi) include a commitment to consummate the purchase or the Purchased Assets within not more than 15 days after entry of a Bankruptcy Court order approving such purchase. The ~~Committee~~Sellers, in consultation with the ~~Sellers~~Committee, shall have the right to deem a bid a Qualified Bid, if such bid does not conform to one or more of the aforementioned requirements, provided however, that such bid must have a value (inclusive of any credit bid component) greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, taking into account all material terms of any such bid. Each Qualified Bid other than that of the Purchaser shall be called a "Subsequent Bid."

### Bid Protection

Recognizing the Purchaser's expenditure of time, energy, and resources, the Sellers have agreed to provide certain bidding protections to the Purchaser. Specifically, the Sellers have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed and, therefore, is entitled to be selected as the Purchaser. As a result, the Sellers have agreed that if the Sellers sell the Assets to a Successful Bidder other than the Purchaser, the Sellers shall, in certain circumstances, pay to the Purchaser a Break-Up Fee equal to three percent (3%) of the Aggregate Cash Consideration (as defined in the Agreement). The payment of the Break-Up Fee ~~or the Expense Reimbursement (as applicable)~~ shall be governed by the provisions of the Agreement and the Bidding Procedures Order. The entire Break-Up Fee shall be payable to Scorpion Capital

Corporation and no portion of the Break-Up Fee will be paid to any employee, officer, director or insider (as defined in section 101(31) of the Bankruptcy Code) of the Sellers.

**Auction**

If the Sellers receive at least one Qualified Bid in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Purchased Assets at 10:00 a.m. (prevailing Eastern time) on June 13, 2008 at the offices of Lowenstein Sandler PC, 1251 Avenue of the Americas, 18th Floor, New York, New York 10022, in accordance with the following procedures: (i) attendance at the Auction will be limited to the Sellers, the Purchaser, any representative of the Committee, any representative of Signature Bank any representative of Allied Capital Corporation (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid, and only the Purchaser, and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction; (ii) at least two business days prior to the Auction, each Qualified Bidder with a Qualified Bid (except Signature Bank or Allied Capital Corporation, in the event that either such party makes a credit bid) must inform the Sellers and Committee whether it intends to participate in the Auction and at least one business day prior to the Auction, the Committee will provide such bidders copies of the Qualified Bid which the Committee believes is the highest or otherwise best offer for the Purchased Assets, (iii) all Qualified Bidders will be entitled to be present for all Subsequent Bids, and (iv) bidding at the Auction will begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $100,000, and conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids. The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), the Sellers shall give the Purchaser a credit in an amount

~~equal to~~<ins>take into account</ins> the Break-Up Fee that may be payable to the Purchaser under the Agreement.

### Credit Bids

At the Auction, pursuant to 11 U.S.C. § 363(k), Signature, for itself or on behalf of its designee, assignee or affiliate, shall have the right to credit bid the entire amount of its secured claim ($16,559,260.16).

At the auction, ~~upon submitting a Qualified Bid~~<ins>pursuant to 11 U.S.C. § 363(k)</ins>, Allied Capital Corporation, for itself or on behalf of its designee, assignee or affiliate, shall have the right~~, pursuant to 11 U.S.C. § 363(k),~~ to credit bid <ins>the entire amount of</ins> its subordinated secured claim ($~~) in connection with any Subsequent Bid(s~~<ins>17,146,456.39, plus any expenses allowed under that certain 12% subordinated secured note dated as of September 12, 2006 and issued by each of the Sellers</ins>).

### Selection Of Successful Bid

As soon as practicable after the conclusion of the Auction, the ~~Committee~~<ins>Sellers</ins> will, in consultation with the ~~Sellers~~<ins>Committee (and, to the extent they are not bidders, Signature Bank and Allied Capital Corporation)</ins>, review each Qualified Bid and identify the highest or otherwise best offer for the Purchased Assets (the "Successful Bid") and the bidder making such bid (the "Successful Bidder"). The Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "Sale Hearing"). If, after an Auction in which the Purchaser: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement, and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to~~: (a) the amount of~~ the Successful Bid~~, less (b) the Break-Up Fee~~.

### The Sale Hearing

The Sale Hearing is currently scheduled for June [19], 2008 at 10:00 a.m. (prevailing Eastern time) before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Room 610, New York, New York 10004. The Sale Hearing may be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing.

If no Qualified Bids other than that of the Purchaser are received, the Sellers will proceed with the sale of the Purchased Assets to the Purchaser following entry of the order approving the Sale. If the Sellers receive additional Qualified Bids, then, at the Sale Hearing, the Sellers shall seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid" and such bidder, the "Alternate Bidder"). A bid will not be deemed accepted by the Sellers unless and until approved by the Bankruptcy Court. Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will effectuate a sale to the Alternate Bidder without further order of the Bankruptcy Court.

### Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account by counsel for the Sellers and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date"). Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).

If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers shall not have any

obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Sellers. On the Return Date, the Seller shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### **Reservation Of Rights**

The Sellers ~~and Committee~~, after consultation with the Committee (and Signature Bank and Allied Capital Corporation if such parties are not then bidders): (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer, and (ii) may reject at any time, any bid (other than the Purchaser's bid) that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates and creditors as determined by the Sellers ~~and Committee~~. Notwithstanding the foregoing, the Sellers, after consultation with and the Committee, may in the exercise of their reasonable discretion, determine that a bid that is not otherwise a Qualified Bid is the highest and best bid for the Assets.

# **EXHIBIT 1 TO BIDDING PROCEDURES**

# NONDISCLOSURE AGREEMENT

This Nondisclosure Agreement (this "Agreement") by and between _____, a _____ corporation (the "Recipient"), and Creative Group, Inc., Animagic LLC, Fangoria Entertainment, Inc., Nate the Great LLC, Moe Greene Entertainment LLC, Starlog Entertainment, Inc., Starlog Group, Inc., Starlog Licensing of America, Inc., and Tangerine LLC (collectively, the "Provider") (each a "Party" and collectively, the "Parties"), is dated as of the latest date set forth on the signature page hereto.

1. **General**. In connection with the consideration of a possible negotiated transaction (a "Possible Transaction") between the Parties, Provider is prepared to make available to the Recipient certain "Diligence Material" (as defined in Section 2 below) in accordance with the provisions of this Agreement, and both Parties agree to take or abstain from taking certain other actions as hereinafter set forth.

2. **Definitions**. (a) The term "Diligence Material" means information concerning the Provider which has been or is furnished to the Recipient or its Representatives in connection with the Recipient's evaluation of a Possible Transaction, including its business, financial condition, operations, assets and liabilities, and includes all notes, analyses, compilations, studies, interpretations or other documents prepared by the Recipient or its Representatives which contain or are based upon, in whole or in part, the information furnished by the Recipient hereunder. The term Diligence Material does not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by the Recipient or its Representatives in breach of this Agreement, (ii) was within the Recipient's possession prior to its being furnished to the Recipient by or on behalf of the Provider, provided that the source of such information was not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, the Provider with respect to such information, or (iii) is or becomes available to the Recipient on a non-confidential basis from a source other than the Provider or its Representatives, provided that such source is not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of

confidentiality to, the Provider with respect to such information.

(b) The term "Representatives" shall include the directors, officers, employees, agents, partners or advisors (including, without limitation, attorneys, accountants, consultants, bankers and financial advisors) of the Recipient or the Provider, as applicable.

(c) The term "Person" includes the media and any corporation, partnership, group, individual or other entity.

3. **Use of Diligence Material**. The Recipient shall, and it shall cause its Representatives to, use the Diligence Material solely for the purpose of evaluating a Possible Transaction, keep the Diligence Material confidential, and, subject to Section 5, will not, and will cause its Representatives not to, disclose any of the Diligence Material in any manner whatsoever; provided, however, that any of such information may be disclosed to the Recipient's Representatives who need to know such information for the sole purpose of helping the Recipient evaluate a Possible Transaction. The Recipient agrees to be responsible for any breach of this Agreement by any of the Recipient's Representatives. This Agreement does not grant the Recipient or any of its Representatives any license to use the Provider's Diligence Material except as provided herein.

4. **Legally Required Disclosure**. If the Recipient or its Representatives are requested or required (by oral questions, interrogatories, other requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Diligence Material, the Recipient shall provide the Provider with prompt written notice of any such request or requirement together with copies of the material proposed to be disclosed so that the Provider may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If, in the absence of a protective order or other remedy or the receipt of a waiver by the Provider, the Recipient or its Representatives are nonetheless legally compelled to disclose Diligence Material or otherwise be liable for contempt or suffer other censure or penalty, the Recipient or its Representatives may, without liability hereunder, disclose to such requiring Person only that portion of such Diligence

Material or any such facts which the Recipient or its Representatives is legally required to disclose, provided that the Recipient and/or its Representatives cooperate with the Provider to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded such Diligence Material or such facts by the Person receiving the material.

       5.    **Return or Destruction of Diligence Material**.  If Recipient decides that it does not wish to proceed with a Possible Transaction, it will promptly inform the Provider of that decision.  In that case, or at any time upon the request of the Provider for any reason, the Recipient will, and will cause its Representatives to, within five business days of receipt of such notice, destroy or return all Diligence Material in any way relating to the Provider or its products, services, employees or other assets or liabilities, and no copy or extract thereof (including electronic copies) shall be retained, except that Recipient's outside counsel may retain one copy to be kept confidential and used solely for archival purposes.  The Recipient shall provide to the Provider a certificate of compliance with the previous sentence signed by an executive officer of the Recipient.  Notwithstanding the return or destruction of the Diligence Material, the Recipient and its Representatives will continue to be bound by the Recipient's obligations hereunder with respect to such Diligence Material.

       6.    **No Solicitation/Employment**.  The Recipient will not, within one year from the date of this Agreement, directly or indirectly solicit the employment or consulting services of or employ or engage as a consultant any of the officers or employees of the Provider, so long as they are employed by the Provider and for three months after they cease to be employed by Provider.  The Recipient is not prohibited from soliciting by means of a general advertisement not directed at (i) any particular individual or (ii) the employees of the Provider generally.

       7.    **Maintaining Privilege**.  If any Diligence Material includes materials or information subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Recipient understands and agrees that the Recipient and the Provider have a

commonality of interest with respect to such matters and it is the desire, intention and mutual understanding of the Parties that the sharing of such material by Provider is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Diligence Material provided by the Recipient that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine.

8. **Not a Transaction Agreement**. The Recipient understands and agrees that no contract or agreement providing for a Possible Transaction exists between the Parties unless and until a final definitive agreement for a Possible Transaction has been executed and delivered, and the Recipient hereby waives, in advance, any claims (including, without limitation, breach of contract) relating to the existence of a Possible Transaction unless and until the shall have entered into a final definitive agreement for a Possible Transaction. The Recipient also agrees that, unless and until a final definitive agreement regarding a Possible Transaction has been executed and delivered, neither Party will be under any legal obligation of any kind whatsoever with respect to such Possible Transaction by virtue of this Agreement except for the matters specifically agreed to herein. Either Party may terminate discussions and negotiations with the other Party at any time.

9. **No Representations or Warranties; No Obligation to Disclose**. The Recipient understands and acknowledges that neither the Provider nor its Representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of the Diligence Material furnished by or on behalf of the Provider and shall have no liability to the Recipient, its Representatives or any other Person relating to or resulting from the use of the Diligence Material furnished to the Recipient or its Representatives or any errors therein or omissions therefrom. As to the information delivered to the Recipient, the Provider will only be liable for those representations or warranties which are made in a final definitive agreement

regarding a Possible Transaction, when, as and if executed, and subject to such limitations and restrictions as may be specified therein. Nothing in this Agreement shall be construed as obligating a the Provider to provide, or to continue to provide, any information to any Person.

10. **Modifications and Waiver**. No provision of this Agreement can be waived or amended in favor of either Party except by written consent of the other Party, which consent shall specifically refer to such provision and explicitly make such waiver or amendment. No failure or delay by either Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder.

11. **Remedies**. Recipient understands and agrees that money damages would not be a sufficient remedy for any breach of this Agreement by Recipient or any of its Representatives and that Provider shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach or threat thereof. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement, but shall be in addition to all other remedies available at law or equity to Provider.

12. **Legal Fees**. In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that either Recipient or its Representatives has breached this Agreement, then the Recipient shall be liable and pay to the Provider the reasonable legal fees and costs incurred in connection with such litigation, including any appeal therefrom.

13. **Governing Law**. This Agreement is for the benefit of the Provider and shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely within such State.

14. **Severability**. If any term, provision, covenant or restriction contained in this Agreement is held by any court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants or restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated, and if a covenant or provision is determined to be unenforceable by reason of its

extent, duration, scope or otherwise, then the Parties intend and hereby request that the court or other authority making that determination shall only modify such extent, duration, scope or other provision to the extent necessary to make it enforceable and enforce them in their modified form for all purposes of this Agreement.

15. **Term**. This Agreement shall terminate one year after the date of this Agreement.

16. **Entire Agreement**. This Agreement contains the entire agreement between the Parties regarding the subject matter hereof and supersedes all prior agreements, understandings, arrangements and discussions between the Parties regarding such subject matter.

17. **Counterparts**. This Agreement may be signed in counterparts, each of which shall be deemed an original but all of which shall be deemed to constitute a single instrument.

**IN WITNESS WHEREOF**, each of the undersigned entities has caused this Agreement to be signed by its duly authorized representatives as of the date written below.

| PROVIDER: | RECIPIENT: |
|---|---|
| **Creative Group, Inc., Animagic LLC, Fangoria Entertainment, Inc., Nate the Great LLC, Moe Greene Entertainment LLC, Starlog Entertainment, Inc., Starlog Group, Inc., Starlog Licensing of America, Inc., and Tangerine LLC**<br>1601 Broadway, 10th Floor<br>New York, New York 10019<br><br>By: _____<br>Name: _____<br>Title _____ | **[COMPANY NAME]**<br>[Address]<br>By: _____<br>Name: _____<br>Title _____ |

Document comparison done by Workshare DeltaView on Tuesday, April 22, 2008 6:53:28 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://LSROS-IWODMS/DBIWOV/5740207/3 |
| Document 2 | interwovenSite://LSROS-IWODMS/DBIWOV/5740207/5 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 34 |
| Deletions | 29 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 65 |