**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Creative Group, Inc., *et al.*,[1] | Case No. 08-10975 (RDD) |
| Debtors. | (Jointly Administered) |

**ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (A) AUTHORIZING AND APPROVING (I) SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES; AND (B) APPROVING RELATED COMPROMISES**

Upon the motion, dated March 31, 2008 (the "Motion"),[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "Sellers") for orders under 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) approving (i) bidding procedures, (ii) certain bid protections, (iii) the form and manner of sale notices, and (iv) the sale hearing date (the "Sale Hearing"), and (b) authorizing and approving (i) the sale of substantially all of the Debtors' assets (the "Assets") free and clear of liens, claims, and encumbrances (the "Sale") to the Purchaser, (ii) the assumption by the Sellers and assignment to the Purchaser of certain executory contracts and unexpired leases (collectively the "Assumed Agreements"), and (iii) the assumption of certain liabilities (collectively, the "Assumed Liabilities") by the Purchaser; and the Court having reviewed the Motion; and the Court having entered on April 23, 2008 an Order approving (i) bidding procedures, (ii) certain bid protections,

---

[1]    The Debtors are:   (1) Creative Group, Inc.; (2) Animagic LLC; (3) Fangoria Entertainment, Inc.; (4) Nate the Great LLC; (5) Moe Greene Entertainment LLC; (6) Starlog Entertainment, Inc.; (7) Starlog Group, Inc.; (8) Starlog Licensing of America, Inc.; and (9) Tangerine LLC.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and (iii) the form and manner of sale notices (Docket No. 106) (the "Bidding Procedures Order"); and upon the record of the sale hearing (the "Sale Hearing") conducted on June 19, 2008, including the description by the parties of the settlements set forth herein; and upon the record in these chapter 11 cases; and the Debtors, Purchaser, the Committee, Allied Capital and Signature Bank (all as defined herein) having reviewed and agreed to the terms of this Order; and it appearing that the relief sought by the Debtors, as modified by this Order, is necessary and in the best interests of the Debtors, their creditors and bankruptcy estates and other parties in interest; and due deliberation having been had, and sufficient cause appearing therefor;

### THE COURT HEREBY FINDS AND DETERMINES THAT: [3]

A.      On March 21, 2008, 2008 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

B.      On March 26, 2008, the Court entered an Order administratively consolidating the Debtors' chapter 11 cases (Docket No. 33).

C.      Since the Petition Date, the Debtors have continued in possession and management of their assets and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D.      No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

E.      On April 4, 2008, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

F.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

G.      The statutory predicates for the relief sought in the Motion are sections

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

105(a), 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.

H.  As evidenced by the certificate of service previously filed with the Court, and based on the representations of counsel for the Debtors at the Sale Hearing: (i) proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6004, 6006, 9007 and 9014, and the Bidding Procedures Order; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the Sale Hearing or the entry of this Order is required.

I.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

J.  The Sellers are the sole and lawful owners of the Assets to be sold pursuant to the Agreement.

K.  On May 6, 2008, pursuant to the Bidding Procedures Order, the Debtors elected an independent member to their respective boards of directors, who accepted the task, among others, of representing the Debtors' boards in connection with the proposed sale process and sale.  This board member was reasonably acceptable to the Debtors, Signature Bank ("Signature"), Allied Capital Corporation ("Allied Capital"), and the Committee.

L.  On June 16, 2008, the Court approved the Stipulation And Agreed Order Regarding Claims Of Allied Capital Corporation And Right Of Allied Capital Corporation To Credit Bid Its Claims Pursuant To 11 U.S.C. § 363(K) (the "Allied Capital Claim Stipulation") (Docket No. 170).  The terms of the Allied Capital Claim Stipulation are incorporated herein.

M.  Pursuant to the Bidding Procedures Order, on June 13, 2008, the Debtors conducted an auction to receive and consider competing offers to purchase the Assets.  No competing bids were submitted and neither Signature nor Allied Capital elected to credit bid any portion of their claims to acquire the Assets.

N.  The offer of Purchaser to purchase the Assets is the highest and best offer received for the sale of the Assets.

O.    The purchase price to be paid by Purchaser is fair and constitutes reasonably equivalent value and reasonable market value for the Assets.

P.    Purchaser is a good faith purchaser with respect to the Assets, as that term is used in section 363(m) of the Bankruptcy Code.  The Agreement was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion, and the Purchaser therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Assets.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be voided under section 363(n) of the Bankruptcy Code.

Q.    Except as specifically provided in the Agreement or this Order, Purchaser shall not assume or become liable for any Pre-Closing Date liens, claims, interests and/or encumbrances relating to the Assets being sold by the Sellers unless expressly stated in the Agreement or this Order.  Any valid and enforceable liens, claims, interests and/or encumbrances shall attach to the proceeds of the sale with the same priority, validity, and enforceability as they had immediately before the closing of the sale.

R.    The Debtors have articulated sound business reasons for entering into the Agreement and selling the Assets as set forth in the Motion outside of a chapter 11 plan, and it is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Agreement with the Purchaser and consummate the transactions contemplated by the Agreement and as set forth in this Order.

S.    The Sellers may sell the Assets free and clear of all liens, claims, interests and/or encumbrances because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Signature Bank and Allied Capital each consent to the Motion and sale of the Assets on the terms set forth in the Agreement, as modified by this Order.  No holders of liens, claims, interests and/or encumbrances objected to the sale or the Motion (any such objections having been withdrawn or resolved), and, thus, all such holders are deemed to have consented to the sale and the Motion pursuant to section 363(f)(2) of the

Bankruptcy Code.

T.     The terms and conditions of the Agreement, including the total consideration to be realized by the Sellers pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement, as modified by this Order, are in the best interests of the Debtors, their creditors and estates.

U.     Based upon the Sellers' and Purchaser's representations that the Agreement will be revised before the Closing Date (defined below) to reflect the modifications set forth in this Order, Signature Bank does not object to the Sale.

V.     A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code.  The Sellers may sell, transfer and assign the Assets free and clear of all liens, claims, interests and/or encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code.  As a condition to purchasing the Assets, the Purchaser requires that (a) the Assets be sold free and clear of all liens, claims, encumbrances, options, rights of first refusal and other interests; and (b) the Purchaser shall have no liability whatsoever for any obligations of or claims (including without limitation as defined in section 101(5) of the Bankruptcy Code) against the Sellers except those expressly assumed in the Agreement or by this Order.  Purchaser would not enter into the Agreement and consummate the transactions contemplated by the Agreement, thus adversely affecting the Debtors' estates, if the sale to Purchaser was not free and clear of all such liens, claims, encumbrances, options, rights of first refusal and other interests or if Purchaser was or would be liable for any such obligations of or claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code) against the Sellers, except as otherwise explicitly provided in the Agreement or this Order.

W.     The transfer of the Assets to the Purchaser is or will be a legal, valid and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest in and to the Assets, free and clear of all liens, claims, interests and/or encumbrances, except those explicitly and expressly excluded by the Purchaser in the Agreement or this Order.

X.     A valid business purpose exists for approval of the assumption and assignment of the Assumed Agreements by the Sellers to the Purchaser in accordance with section 365 of the Bankruptcy Code.

Y.     The requirements of sections 363(b) and 363(f) of the Bankruptcy Code and any other applicable law relating to the sale of the Assets have been satisfied.

Z.     The settlements embodied herein are fair and equitable and in the best interests of the Debtors' estates and satisfy the requirements of Fed. R. Bankr. P. 9019.  The settlements embodied herein fall above the lowest point in the range of reasonableness and represent the sound exercise of the Debtors' business judgment.

AA.     The Court takes judicial notice of the record in these cases including, without limitation, the Bidding Procedures Order and the Court's May 9, 2008 final Order (a) authorizing the Debtors to obtain postpetition financing, grant security interests and liens and accord priority status; (b) authorizing use of cash collateral; (c) granting adequate protection; and (d) modifying the automatic stay (Docket No. 140) (the "Final DIP Financing Order").

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

**A.     Sale of Assets Approved; Transactions Authorized.**

1.     The Motion is granted as set forth herein.

2.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits and denied.

3.     The Motion, Agreement and the transactions contemplated thereby are approved as modified by this Order, and the Sellers are hereby authorized and empowered to enter into, and to perform their obligations under, the Agreement and to act as necessary to effectuate the terms of the Agreement, without further corporate authorization or Order of this Court.

4.     The Sellers are hereby authorized and empowered, pursuant to sections

105 and 363(b) and (f) of the Bankruptcy Code, to sell the Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Agreement and this Order; and pursuant to sections 105 and 363 of the Bankruptcy Code, title to the Assets shall pass to Purchaser at the closing free and clear of any and all liens (including mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in section 101(5) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of any Court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date and through the Closing Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Liens and Claims"), with all such Liens and Claims upon the Assets to be unconditionally released, discharged and terminated; provided that all such Liens and Claims shall attach to the proceeds of the transaction with the same priority, validity, force and effect as they existed with respect to the Assets prior to closing, except as may be expressly set forth herein.

5.    The Sellers and Purchaser shall modify the Agreement to include, among other modifications agreed to by the Sellers and Purchaser and consistent with the terms of this Order, the following: (a) section 3.1(ii)(x) of the Agreement shall be modified to read as follows: "cash   to be paid to Signature Bank in the aggregate amount of $14,044,000.00 less the

Committee Settlement Amount,[4] the Allied Capital Settlement Amount,[5] cure costs not to exceed $445,287.00, $239,543.00 and $60,000.00 of the R.R. Donnelly Cure Amount[6] (the "Aggregate Cash Consideration")"; and, (b) section 3.1(ii)(y) of the Agreement shall be modified to read as follows: "a term note in the aggregate amount not to exceed $3,650,000.00 by Buyer in favor of the Senior Secured Lender, which amount shall be equal to the difference between the Aggregate Cash Consideration and the amounts owed, by any or all of the Sellers, to the Senior Secured Lender and the DIP Lender. In each case, the foregoing modifications to the Agreement shall be reasonably acceptable to Signature Bank, Sellers, the Committee, and Purchaser.

6.  The Sellers and Purchaser are authorized to modify, amend and/or supplement the Agreement to conform to the terms of this Order and any modifications stated on the record at the Sale Hearing. Copies of any revised Agreement shall be provided to the parties referenced in paragraph 22 of the Final DIP Financing Order.

**B.  Transfer Of The Assets To Purchaser.**

7.  The transfer of the Assets to Purchaser pursuant to the Agreement constitutes a legal, valid and effective transfer and shall vest Purchaser with all right, title and interest of the Sellers in and to the Assets so transferred.

8.  This Order and the Agreement shall be binding upon, and shall inure to the benefit of, the Sellers and Purchaser and their respective successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Sellers or any trustee appointed in a chapter 7 case if any of the Debtors' cases are converted from chapter 11.

9.  On the date of the closing of the transactions contemplated by the Agreement (the "Closing Date"), each of the creditors of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens and Claims against or in the Assets, if any, as such Liens and Claims may have been recorded or may

---

[4]  As defined herein.
[5]  As defined herein.
[6]  As defined herein.

otherwise exist.

10.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens and Claims against or in the Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Liens and Claims that the person or entity has with respect to the Assets, the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets.

11.    Effective upon the Closing Date, all parties and/or entities asserting Liens and Claims and contract rights against the Sellers and/or any of the Assets are hereby permanently enjoined and precluded from, in each case only with respect to such Liens and Claims:  (i) asserting, commencing or continuing in any manner any action against the Purchaser or any of its current or former directors, officers, agents, representatives or employees (collectively, the "<u>Protected Parties</u>") or against any Protected Party's assets or properties, including without limitation the Assets; (ii) the enforcement, attachment, collection or recovery, by any manner or means, of any judgment, award, decree or order against the Protected Parties or any properties or assets of the Protected Parties, including without limitation the Assets; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Protected Parties or any properties or assets of the Protected Parties, including without limitation the Assets; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Protected Parties; and (v) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Order or the Agreement.

12.    The provisions of this Order authorizing the sale of the Assets free and clear of Liens and Claims (with such Liens and Claims to attach to the proceeds of the sale of the Assets as provided in this Order) shall be self-executing, and neither the Sellers, the Purchaser nor any other party shall be required to execute or file releases, termination statements,

assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Agreement or this Order.  Without in any way limiting the foregoing, Purchaser is empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

13.     Consummation of the Agreement and the transactions contemplated therein and thereby will not effect a *de facto* merger or consolidation of the Sellers and the Purchaser or result in the continuation of the Sellers' business under the Purchaser's control.

14.     All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

**C.     Assumption And Assignment Of Assumed Agreements Authorized.**

15.     The requirements of section 365(b) of the Bankruptcy Code having been satisfied, the Sellers are hereby authorized and empowered to assume and assign and sell the Assumed Agreements to the Purchaser under the Agreement free and clear of all Liens and Claims pursuant to sections 363 and 365 of the Bankruptcy Code.

16.     Pursuant to section 365(k) of the Bankruptcy Code, effective upon the assignment of the Assumed Agreements to the Purchaser hereunder, the Sellers shall be relieved from any further obligations under or related to the Assumed Agreements.

17.     Other than Panasia Estate, Inc. and Times Square JV, LLC, each non-debtor party to an Assumed Agreement is hereby bound to the cure amount set forth in the Debtors' Notice of Cure Amount (Docket No. 139) (the "Cure Notice").  The cure amount for Panasia Estate, Inc. shall be as set forth in a separate Stipulation and Consent Order to be submitted by the Debtors and Panasia Estate, Inc. within ten (10) business days following the entry of this Order.  The cure amount for Times Square JV, LLC shall be as set forth in a

separate Stipulation and Consent Order to be submitted by the Debtors and Times Square JV, LLC within ten (10) business days following the entry of this Order. In the event the Debtors and Panasia Estate, Inc. and/or Times Square JV, LLC fail to reach agreement on the terms of a Stipulation and Consent Order resolving their respective cure objections within ten (10) business days following the entry of this Order, counsel for the Debtors shall file a Request for Hearing and the Court will schedule a hearing to determine the cure amount owing to Panasia Estate, Inc. and/or Times Square JV, LLC, if any. If Debtors and Panasia Estate, Inc. and/or Times Square JV, LLC fail to reach agreement on the terms of a Stipulation and Consent Order resolving their respective cure objections as set forth herein, the Debtors', Panasia Estate, Inc.'s and Times Square JV, LLC's rights and defenses are preserved in all respects.

18.     Each of the executory contracts and unexpired leases listed in the Cure Notice, other than the Debtors' agreements with Norm Jacobs and Rita Eisenstein, shall be assumed and assigned to the Purchaser on the Closing Date, and the Purchaser shall pay the full amount due (in the amounts listed on the Cure Notice, except with respect to Times Square JV, LLC and Panasia Estate, Inc. and in the following decretal paragraph) to each of the non-debtor parties to such Assumed Agreement on the Closing Date or such other time as the non-debtor party to such Assumed Agreement consents.

19.     Notwithstanding the cure amount set forth next to R.R. Donnelly's contract in the Cure Notice, R.R. Donnelly's cure amount shall be $120,000.00 (the "R.R. Donnelly Cure Amount"), payable as follows: (x) Signature Bank shall pay $60,000.00 on the Closing Date; and, (y) Purchaser shall pay $60,000.00 in equal monthly installments over a period of six (6) months beginning on the first day of the month following the month in which the Closing Date occurs. The preceding sentence and nothing in this Order shall constitute an assumption of the Debtors' agreement with R.R. Donnelly and Purchaser's obligations to R.R. Donnelly if such agreement is subsequently rejected shall be limited to the amount set forth in this paragraph.

20.     Signature Bank's agreement to fund a portion of the R.R. Donnelly Cure

Amount is contingent upon the parties' agreement in respect of the Avoidance Actions (defined herein) and Releases set forth in Sections G and H, respectively, of this Order.

### D.    Good Faith Purchase.

21.    The purchase by Purchaser is a purchase in good faith for fair value within the meaning of section 363(m) of the Bankruptcy Code, and Purchaser is entitled to all of the protections afforded good faith purchasers by section 363(m) of the Bankruptcy Code.

22.    The sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code. The consideration provided by Purchaser for the Assets under the Agreement shall be deemed to constitute reasonably equivalent value and fair consideration.

### E.    Allied Capital Settlement.

23.    On the Closing Date and as a condition to closing of the transactions contemplated in this Order, Allied Capital will receive cash equal to $750,000.00 (the "Allied Capital Settlement Amount") and hereby waives its right to receive any portion of the Committee Settlement Amount (defined below). The Allied Capital Settlement Amount will be paid into such account(s) as an authorized representative of Allied Capital shall instruct the Purchaser within two (2) business days prior to the Closing Date. If payment instructions are not received within two (2) business days of the Closing Date, Purchaser shall cause the Allied Capital Settlement Amount to be paid into (via wire transfer or certified funds) the Greenberg Traurig LLP Attorney Trust Account.

### F.    Committee Settlement.

24.    Signature Bank holds a valid, fully perfected, first priority, senior security interest in all assets of the Debtors, including, without limitation, all assets acquired or created post-petition, pursuant to the Final DIP Financing Order. On the Closing Date, Signature Bank shall reallocate a portion of its collateral and pay from its security interests in the Assets to the Debtors' estates the amount of $250,000.00 (the "Committee Settlement Amount"). The

Committee Settlement Amount shall be held separately, at interest, from the Debtors' other assets, and shall not be subject to any Lien or Claim of Signature Bank or Allied Capital, including any deficiency claim. It is ordered that the Committee Settlement Amount shall be distributed to holders of allowed unsecured claims, including administration expense claims, pursuant to a plan of reorganization that complies with all applicable requirements of the Bankruptcy Code and applicable law relating to the confirmation of plans.

25.     As soon as practicable after the Closing Date, the Debtors and Committee intend to file a Joint Liquidating Plan of Reorganization providing, among other things, for the (i) creation of a creditor trust for the benefit of creditors to liquidate the remaining assets of the Debtors' estates following the effective date of such plan; and, (ii) to the fullest extent permitted by the Bankruptcy Code and applicable law, the distribution of the Committee Settlement Amount to the holders of allowed general unsecured claims against the Debtors.

**G.     Avoidance Actions.**

26.     Notwithstanding anything in the Agreement to the contrary, the Sellers shall not transfer, and Purchaser acknowledges and agrees that it is not purchasing, any causes of action of the Debtors pursuant to sections 510 and 542 through 553 of the Bankruptcy Code (the "Avoidance Actions"), other than Avoidance Actions against Insiders of the Debtors (as defined in 11 U.S.C. § 101(31)) (the "Insider Avoidance Actions"). Sellers shall transfer pursuant to the Agreement, and Purchaser shall acquire, the Insider Avoidance Actions. The Committee, Signature Bank and Allied Capital acknowledge and agree that Purchaser has negotiated for the purchase of the Insider Avoidance Actions, and the Purchase Price includes sufficient consideration for the fair value of any Insider Avoidance Actions.

27.     As additional consideration for the compromises agreed to herein by Signature Bank and Allied Capital, the proceeds from Avoidance Actions (after deducting the fees and costs associated with liquidating the Avoidance Actions, the "Net Avoidance Action Proceeds") shall be distributed as follows: (x) Signature Bank shall be entitled to receive the Net Avoidance Action Proceeds from $1.00 up to and including $45,000.00; (y) Allied Capital shall

be entitled to receive the Net Avoidance Action Proceeds from $45,001.01 up to and including $75,000.00; and, (z) Net Avoidance Action Proceeds over $75,001.00 shall be distributed *pro rata* to holders of allowed claims (as defined in 11 U.S.C. sec. 101(5)), including, without limitation, Signature's allowed "deficiency" claim of $15,000.00 and Allied Capital's allowed claims, pursuant to a plan of reorganization confirmed by a final order of the Court.

**H.    Mutual Releases By Allied Capital Corporation, Debtors, Purchaser, the Committee, Signature Bank, and Each Of Their Respective Former, Present, And Future Assigns, Predecessors, Successors, Affiliates, Parent Companies, Subsidiaries, Controlled Companies, Employees, Officers, Directors, Shareholders, Principals, Members Or Agents.**

28.    Except with respect to the enforcement of the Agreement and this Order, any and all claims, rights and liabilities of any nature, including but not limited to, actions, demands, causes of action, damages, special, indirect, or consequential damages, punitive damages, debts, charges, attorneys' fees, costs, arbitration, forfeitures, and liens by and among the Debtors, Purchaser, the Committee and its members, Allied Capital, Signature Bank, and each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members, or agents and professionals (each, a "Released Party" and collectively, the "Released Parties") arising out of, or relating to, any causes of action, claims or interests in connection with the Debtors, the Debtors' bankruptcy cases, the transactions contemplated in this Order, and any agreements among the Released Parties (including, but not limited to the Prepetition Credit Documents and DIP Loan Agreements, and any related actions or omissions by any Released Party), whether arising before or after the Petition Date and prior to the Closing Date, whether known or unknown, whether in contract, express or implied, tort, at law or in equity, or arising under or by virtue of any state or federal statute or regulation, including without limitation, the Bankruptcy Code and/or the Federal Rules of Bankruptcy Procedure, shall be deemed released, discharged and forever waived by and on behalf of each of the Released Parties with the exception of the breach of fiduciary duty, willful misconduct or

gross negligence, if any (other than with respect to the transactions contemplated by this Order and the releases granted to and by the Purchaser, Allied Capital and Signature Bank) of (a) the Debtors directors, officers, employees, shareholders, and professionals and (b) the Committee and its professionals; provided that the releases set forth herein shall be effective and fully enforceable only upon the occurrence of all of the following, and without any further notice, order, or action by the Court or any Released Party: (i) entry of this Order by the Court; (ii) the occurrence of the Closing Date; (iii) the receipt by Allied Capital of the Allied Capital Settlement Amount; and, (iv) the payment into escrow of the Committee Settlement Amount.

**I.     Maintenance Of Financial Records; Access Thereto.**

29.     Notwithstanding anything to the contrary contained in the Agreement, all financial books and records of Sellers which remain in the possession of Purchaser after the Closing Date (the "Financial Records"), are subject to the right of the Debtors, the Committee and any subsequently appointed trustee (including without limitation a trustee appointed pursuant to a plan of reorganization to liquidate the Debtors' remaining assets) to review and copy the Financial Records, at such trustee's sole cost and expense, during normal business hours and upon reasonable notice until the date the Debtors' bankruptcy cases are closed or dismissed by Order of the Court.

30.     The Purchaser agrees that prior to destroying or otherwise disposing of any of the Financial Records, Purchaser shall provide written notice to the Debtors (as provided for in the Agreement) and/or the Committee or any trustee appointed, of its intent to dispose of or destroy the Financial Records.  The Sellers and/or Committee or trustee appointed shall have thirty (30) days from the date notice is given to take possession of or copy the Financial Records, at their sole cost and expense.

**J.     Additional Decretals.**

31.     The recitals and findings of facts set forth above are hereby incorporated as a part of this Order.

32.     As provided by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order

shall be effective and enforceable immediately upon entry.

33.    The provisions of this Order are nonseverable and mutually dependent.

34.    Nothing contained in any plan of reorganization (or liquidation) confirmed in these cases or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

35.    This Order shall be binding upon and inure to the benefit of the Debtors, Purchaser, Committee, Allied Capital and Signature Bank and each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members or agents, whether a signatory hereto or not, including, but not limited to, any subsequently appointed trustee (including without limitation a chapter 7 trustee).

36.    This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Agreement and to resolve any dispute concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Assets free and clear of Liens and Claims.

37.    The Debtors, Purchaser, Committee, Allied Capital and Signature Bank expressly understand and agree that the Agreement and this Order, together, constitute the entire understanding and agreement between the parties, and supersede and replace all other prior negotiations, agreements or understandings between the parties, whether written or oral, relating to the subject matter hereof.  Each of the parties acknowledges and represents that no other party or agent or attorney of any other party has made a promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matter of the Agreement or this Order.  Each party acknowledges and represents that it has not agreed to this Order in reliance upon any promise, representation or warranty whatsoever not expressly set

forth in the Agreement or this Order.

38. The division of this Order into sections or other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Order.

39. Each person signing this Order as an agent or representative of any party hereby covenants and warrants to the Court and the other parties that he or she is fully authorized to sign this Order on behalf of the party he or she represents and is fully authorized to bind that Party to all of the terms of this Order.

**Agreed To By:**

Dated: June 30, 2008

**CREATIVE GROUP, INC., ANIMAGIC LLC, FANGORIA ENTERTAINMENT, INC., NATE THE GREAT LLC, MOE GREENE ENTERTAINMENT LLC, STARLOG ENTERTAINMENT, INC., STARLOG GROUP, INC., STARLOG LICENSING OF AMERICA, INC., AND TANGERINE LLC**

*Debtors and Debtors-in-Possession*

By: ___/s/ *S. Jason Teele*_____
Kenneth A. Rosen, Esq. (KR 4963)
Sharon L. Levine, Esq. (SL 2109)
S. Jason Teele, Esq. (ST 7390)
Alison E. Kowalski (AK 2099)
**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas, 18th Floor New York, New York 10020
Tel: (212) 262-6700

Dated: June 30, 2008

**CREATIVE GROUP ACQUISITION CO.**

By: ___/s/ *David Tamman*_____
David Tamman

**NIXON PEABODY LLP**
Gas Company Tower
555 West Fifth Street
Los Angeles, CA 90013
Tel.: (213) 629-6000
-- and --
**NIXON PEABODY LLP**
Dennis Drebsky
437 Madison Avenue
New York, NY 10022
Tel.: (212) 940-3000

Dated: June 30, 2008

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR CREATIVE GROUP, INC., *ET AL.***

By: _/s/ Schuyler G. Carroll_____
Robert Hirsh (RH-5499)
Schuyler G. Carroll (SC-1234)
**ARENT FOX LLP**
1675 Broadway
New York, New York 10019
Tel: (212) 484-3900

Dated: June 30, 2008

**ALLIED CAPITAL CORPORATION**

By: _/s/ John W. Weiss_____
Nancy A. Mitchell (NM-4135)
John W. Weiss (JW-4222)
**GREENBERG TRAURIG, LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200

Dated: June 30, 2008            **SIGNATURE BANK**

By: _/s/ Lawrence J. Kotler_____
Lawrence J. Kotler
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Tel:  (215) 979-1514

**THE FOREGOING IS HEREBY ORDERED:**
Dated:  June 30, 2008
      New York, New York

/s/ Robert D. Drain_____
Honorable Robert D. Drain
United States Bankruptcy Judge